UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JOHN AND MAUREEN M., individually
and on behalf of J.M.

      v.                        C.A. No. 14-555-ML

CUMBERLAND PUBLIC SCHOOL

**MEMORANDUM AND ORDER**

The petitioners, John and Maureen M. (the "Petitioners"), individually and on behalf of their disabled child, J.M., filed a petition (the "Petition") for attorney fees in this Court after participating in an administrative impartial due process hearing before an Independent Hearing Officer ("IHO"), pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. 1400 *et seq*. Respondent Cumberland Public School District (the "School District") filed an objection to the petition, together with a counterclaim in which it seeks reversal of the IHO's only finding (of eight separate findings) that was made in the Petitioners' favor. The matter is before the Court on the parties' cross-motions for summary judgment.

**I.  Factual Background and Procedural History**[1]

The Petitioners and the School District are in agreement regarding many of the underlying facts in this case. It is undisputed that during the 2013-2014 school year, the time period at issue, J.M. was in the second grade in the Cumberland School District. Petitioners' SUF 1 (hereinafter, "PSUF"), Respondent's SUF 1, 2 (hereinafter, "RSUF"). J.M. received special education and related services pursuant to an IEP [Individualized Education Program] developed by his IEP team on December 2, 2013. RSUF 2. Under that IEP, J.M. spent 80% of his time at school in a regular classroom. Petitioners' Ex. 19.  J.M. also received one-on-one or small group instructions with a special educator in reading, writing and math. RSUF 4-6; Pet'rs' Ex. 19.  With respect to writing and math, those instructions took place in the regular classroom; the reading instruction was provided in a separate resource classroom. RSUF 9, 10; Pet'rs' Ex. 19.

In May 2014, following two IEP meetings in April 2014, J.M.'s reading sessions were moved from a "resource classroom" to a small group setting in the "Intense Academic Program" classroom. RSUF 12, 13, 15-17. J.M.'s mother requested to see the classroom where

---

[1] Each party presented a Statement of Undisputed Facts ("SUF") in support of its position, see Dkt. Nos. 9, 11; neither party filed a Statement of Disputed Facts to contest the opposing party's SUF, leaving both parties' respective presentations of the facts unchallenged. See Local Rule LR Cv 56(a)(3).

2

J.M. received reading instruction while class was in session.[2] RSUF 19. The School District declined, citing confidentiality concerns. Decision at 19. Mrs. M. was given the opportunity to view the classroom when there were no other students present, but she apparently declined. RSUF 20. She also briefly visited the classroom with J.M. and his instructor during a "Celebration of Learning" event at the school. RSUF 22.

Another IEP for J.M. was developed on June 2, 2014. Apart from changing the location of J.M's writing and math instructions, this IEP was identical to the December 2013 IEP. RSUF 37-39. Instead of receiving specialized instruction one-on-one from a special educator in the back of his regular classroom as he did before, J.M. was to receive that instruction in one-on-one or small group settings in another classroom. RSUF 40.

On June 17, 2014, the Petitioners filed a due process complaint regarding J.M.'s placement in a smaller classroom. The Petitioners asserted various other claims, including the School's alleged refusal to accept the recommendations of consultants hired by the Petitioners to assist with J.M.'s educational and emotional health. IHO's Decision at 4. Following a number of pre-hearings, the IHO held five days of hearings between September 16 and 26,

---

[2] Apparently, Mrs. M. was under the impression that J.M. was spending the entire day in that classroom; however, J.M. only received forty minutes of reading instruction in that room every school day in May and June 2014. RSUF 19, 20.

2014, in the course of which numerous witnesses testified and a number of exhibits were placed on the record.

On November 30, 2014, the IHO issued a 22-page written decision, in which he concluded that the School "appropriately crafted [an] IEP that provided [a] FAPE [Free Appropriate Public Education] and did not ignore consultant recommendations." He also determined, in the sole finding favorable to the Petitioners, that the School "did commit a procedural violation that inhibited petitioner's ability to participate in the IEP process," namely, denying the parents access to the smaller classroom setting for observation during classroom hours. All other claims by the Petitioners were denied.

Specifically, the IHO concluded that the Petitioners failed to meet their burden of proving their allegations that

(1) the change in J.M.'s placement to a more restrictive environment was improper;

(2) the proposed IEP failed to provide a FAPE because (a) the proposed IEP was calculated only to provide *a de minimis* educational benefit, and (b) the School District "failed to accommodate obstacles to J.M.'s ability to access FAPE as a result of his anxiety disorder;"

(3) the School District failed to adopt the recommendations of the Petitioners' consultants; and

(4) the School District committed certain procedural

4

violations that substantively inhibited J.M.'s access to a FAPE.

With respect to the last item, the IHO made four separate findings, only one of which was decided in favor of the Petitioners: (a) that "the denial of access to the classroom for even a brief visit during classroom hours constitute[d] a procedural violation because the denial inhibited the petitioner[s'] ability to be fully informed members of the IEP team." Decision at 17 (Dkt. No. 1-4). The IHO rejected the Petitioners' claims that (b) Extended Year Services were improperly implemented; (c) the School District failed to supply J. M. with an "annual IEP;" and (c) the School District did not act in good faith and changed J.M.'s proposed educational placement after the due process complaint was filed. Decision at 20-22.

In sum, out of eight discrete determinations by the IHO, seven were decided in favor of the School District. The single determination in favor of the Petitioners was limited to a finding of a "procedural violation." The IHO noted, however, that "there is no general right to viewing the environment in [IDEA]," although "the direction from OSEP [Office of Special Education Programs] is clearly to allow such viewing if at all possible." Decision at 18-19. Most significantly, the IHO determined that the School District "appropriately crafted [an] IEP that provided [a] FAPE." Decision at 1. It is undisputed that no changes were mandated or implemented as a result of the IHO's finding of the "procedural violation."

5

On December 29, 2014, the Petitioners filed the Petition for attorney fees in this Court for the "successful prosecution of the administrative Impartial Due Process Hearing." The Petition seeks (1) a declaration from this Court that the Petitioners are "the prevailing party in this matter," and (2) payment of $30,650 in attorney fees. The Petitioners note that no appeal of the Decision had been filed by the School District. Petition at 1 (Dkt. No. 1).

On December 30, 2014, the School District filed an answer to the Petition, in which it correctly pointed out that (1) the IHO concluded that J.M. had been provided with a FAPE, and (2) the Petitioners received no benefit as a result of the IHO's finding of a procedural violation with respect to the classroom inspection. Answer at 2 (Dkt. No. 2). In addition, the School District asserted a counterclaim in which it sought a review and reversal of the IHO's determination that the Petitioners should have been granted access to the classroom during the school day. Answer at 8 (Dkt. No. 2).

In response, the Petitioners sought dismissal of the counterclaim and summarily requested this Court to uphold the IHO's decision regarding the classroom access issue. Pet'rs' Answer at 2 (Dkt. No. 3).

Following a Rule 16 conference with this Court on February 11, 2015, the parties filed cross-motions for summary judgment on March 31, 2015 (Dkt. Nos. 8, 9, 10, 11). The Petitioners' motion is

limited to a request of attorney fees, based on repeated (but erroneous) assertions that, according to the IHO's findings, J.M. was denied a FAPE, see Pet'rs Motion at 2, 4. However, the motion does not address the School District's counterclaim.

The School District, in its motion, focuses primarily on the IHO's finding regarding the classroom inspection which, the School District contends, was based on incorrect facts and an incorrect application of the law. Respondent's Motion at 3 (Dkt. No. 10-1). Accordingly, the School District calls for a reversal of the IHO's Decision on that issue and/or a declaration from this Court that the Petitioners are not prevailing parties in the administrative proceedings. With respect to the Petitioners' request for attorney fees, the School District submits that, even if the IHO's Decision were to be affirmed, the Petitioners do not qualify as prevailing parties because they did not achieve any benefits in bringing suit against the School District. Id. at 15.

On April 17, 2015, the School District filed a reply to the Petitioners' Motion, challenging (1) the Petitioners' insistence that J.M. was denied a FAPE as a result of the lack of access to the classroom, and (2) the undifferentiated request for $30,650 in attorney fees for prevailing on a single claim (out of eight) against the School District. The School District points out that, notwithstanding the finding of a "procedural violation," no changes were made as a result of that particular finding. Pet'rs' Reply at

1-2, 10 (Dkt. No. 12).

The Petitioners, on their part, elected not to file a response to the School District's motion, leaving the Respondent's request to vacate the IHO's finding of a single procedural violation unopposed.

**II. Standard of Review**

In reviewing an appeal from an administrative decision under IDEA, the Court accords "due deference" to the Hearing Officer's findings of fact and reviews the Hearing Officer's rulings of law under the IDEA framework *de novo*. Abrahamson v. Hershman, 701 F.2d 223, 230 (1st Cir. 1983)(courts must give "'due weight'" to state administrative agencies," but "ultimately must make 'independent decision[s] based on a preponderance of the evidence'")(quoting Board of Educ. Of Hendrick Hudson Central School Dist., Westchester County v. Rowley, 458 U.S. 176, 206, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982)); Ross v. Framingham Sch. Comm., 44 F.Supp.2d 104, 111-12 (D. Mass. 1999), *aff'd* 229 F.3d 1133 (1st Cir. 2000)(Court's review of hearing officer's findings is "appropriately 'thorough yet deferential'". . . Legal rulings are subject to nondeferential (or de novo) review.")(internal citations omitted); Slater v. Exeter-West Greenwich Reg'l Sch. Dist., 2007 WL 2067719 *2 (D.R.I., July 16, 2007). "[A]ny rulings about applicable law that are not in conformity with applicable statutes and precedents" are disregarded. Ross v. Framingham Sch. Comm., 44 F.Supp.2d at 112.

8

The First Circuit has described the applicable standard of review as "intermediate," requiring "'a more critical appraisal of the agency determination than clear-error review entails, but which, nevertheless, falls well short of complete de novo review.'" Rafferty v. Cranston Pub. Sch. Comm., 315 F.3d 21, 25 (1st Cir. 2002)(quoting Lenn v. Portland Sch. Comm., 998 F.2d 1083, 1086 (1st Cir.1993)).

An IDEA motion for summary judgment does not limit the court to considering the facts in the light most favorable to the non-moving party; rather, it is "'a procedural device through which to decide the case on the basis of the administrative record.'" Bristol Warren Reg'l Sch. Dist., 758 F.Supp.2d at 87 (quoting Cranston Sch. Dist. v. Q.D., C.A. No. 06–538ML, 2008 WL 4145980, at *5 (D.R.I. Sept. 8, 2008)). In making its decision, the court must impose the burden of proof on "the party 'challenging the outcome of the administrative decision,'" here the School District. Bristol Warren Reg'l Sch. Dist., 758 F.Supp.2d at 87 (quoting Cranston Sch. Dist., 2008 WL 4145980, at *5). See Schaffer v. Weast, 546 U.S. 49, 62, 126 S.Ct. 528, 163 L.Ed.2d 387 (2005).

**III. Attorney Fees**

Under the IDEA, the parents of a child with a disability who prevail in the administrative proceeding or litigation related to a due process hearing, may be entitled, in the discretion of the Court, to reimbursement of reasonable attorney fees. 20 U.S.C. §

1415(i)(3)(B)(i)(I); Smith v. Fitchburg Pub. Sch., 401 F.3d 16, 22 (1st Cir.2005)(IDEA provides recovery of reasonable attorney's fees to prevailing party in the court's discretion).

"[A] prevailing party is any party who 'succeed[s] on any significant issue ... which achieves some of the benefits plaintiffs sought in bringing suit.'" Maine Sch. Admin. Dist. No. 35 v. Mr. and. Mrs. R., 321 F.3d 9, 14 (1st Cir. 2003). A party in a proceeding or law suit related to IDEA is considered "prevailing" when there is a "material alteration of the legal relationship of the parties" as well as "judicial imprimatur on the change." Smith v. Fitchburg Pub. Sch., 401 F.3d 16, 22 (1st Cir. 2005)(quoting Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001)). Such "judicial imprimatur" includes an administrative hearing involving a hearing officer. Smith v. Fitchburg Pub. Sch., 401 F.3d at 22 n. 9. ("[F]or purposes of the IDEA, a party may 'prevail' in an administrative hearing—thus the appropriate involvement of a [state educational agency] hearing officer can provide the necessary 'judicial imprimatur.' ").

**IV. Discussion**

At the outset, the Court notes that the IHO states in the Decisions' conclusion section that "[t]he petitioner has requested prevailing party status. I will address prevailing party status in a separate opinion." Decision at 22 (Dkt. No. 1-4). Neither party

10

made reference to this statement in any of the submitted briefs, and no separate opinion by the IHO regarding prevailing party status was included in the Administrative Record submitted to this Court. On May 7, 2015, the Court conducted a telephone conference in which both parties acknowledged that, notwithstanding his earlier statement in the Decision, the IHO had informed them via a brief memorandum that he did not intend to address the question of prevailing party status.[3] Accordingly, the Court will proceed to resolve this issue without the benefit of the IHO's conclusion.

The Petitioners commenced proceedings in this Court for the sole purpose of obtaining reimbursement of the attorney fees that they incurred in the administrative proceedings. Petition at 4 (Dkt. No. 1). In objecting to the Petitioners' request for attorney fees, the School District asserted a counterclaim, seeking the reversal of the IHO's determination with respect only to the single claim of a "procedural violation" that was decided in the Petitioners' favor (and did not result in any change to the June 2014 IEP for J.M. or any other benefits to the Petitioners). Respondents' Answer at 8 (Dkt. No.2). Although the Petitioners summarily requested in their answer that the IHO's decision on that issue be upheld, Petitioners' Answer at 2 (Dkt. No. 3), their request was entirely unsupported and no argument to that effect was

---

[3]Neither party had thought to include this memorandum in the administrative record that was submitted to this Court.

developed. Likewise, the Respondent's request for a reversal of the IHO's Decision was not addressed in the Petitioners' cross-motion for summary judgment, (Dkt. No. 8-1). As such, the Respondent's motion to overturn the IHO's finding regarding the School District's denial of the requested classroom visit during school hours is unopposed.

A review of the IHO's Decision, particularly the sole determination the IHO made in favor of the Petitioners, reveals that the determination was in error. First, the Decision appears to reflect the IHO's understanding that, in April 2014, J.M. was placed into a small classroom setting for the delivery of his entire specialized education when, in fact, J.M. only received reading instruction in the new setting. Decision at 15. In accordance with both his December 2013 IEP and the new June 2014 IEP, J.M. continued to receive math and writing instructions in the regular education classroom in May and June 2014 (when Mrs. M. requested access to the classroom.) Decision at 15.

Further, is uncontested that Mrs. M. was offered an opportunity to view the classroom when there were no other students present, but that she did not avail herself of the opportunity. Respondents' SUF 21. Likewise, it is undisputed that she visited the classroom with J.M. and his reading instructor in May 2014. Respondents' SUF 22.

Finally, as the IHO acknowledged in his determination, "there

is no[] specific right in the Act to view a proposed educational placement or learning environment." Decision at 18. The Decision quotes extensively from an OSEP [Office of Special Education Program] policy letter, which states that "neither the statute nor the regulations implementing the IDEA provide a general entitlement for parents of children with disabilities . . . to observe children in any current classroom or proposed educational placement. The determination of who has access to classrooms may be addressed by State and/or local policy." Decision at 15. Although the letter encourages "school district personnel and parents to work together in ways that meet the needs of both the parents and the school, including providing opportunities for parents to observe their children's classrooms and proposed placement options," id., the undisputed facts in this case establish that the School District did make such an effort: it invited Mrs. M. to view the classroom—in which J.M. was spending just forty minutes per day at the time of her request—when no other children were in attendance. Mrs. M. declined the opportunity, although she did visit the classroom while both her child and the reading instructor were present.

Notwithstanding the Petitioners' continued insistence that, according to the IHO, such a procedural violation resulted in denial of a FAPE to J.M., the record is clear that this was not the case. Rather, the Decision explicitly states that the Respondent

13

"appropriately crafted [an] IEP that provided [a] FAPE." Decision at 1. At most, the IHO concluded that, by denying the Petitioners access to the classroom while class was in session, the School District had impeded the Petitioners' "opportunity to participate in the decision-making progress regarding the provision of a FAPE." Decision at 17. Even that determination, however, was called into doubt by the IHO's acknowledgment that "there is no general right to viewing the environment in the statute." Moreover, there is no indication, and the Petitioners have not asserted, that they received any of the relief they sought in commencing the administrative proceedings or that the sole determination in their favor resulted in any benefit to them. In sum, there is no support for the Petitioners' insistence that J.M. was denied a FAPE or their assertion that they qualify as "prevailing parties" in the underlying proceedings.

Under those circumstances, the Court is of the opinion that the IHO's finding regarding the Petitioners' requested access to the "Intense Academic Program" classroom during class was in error. For the foregoing reasons, and in the absence of any substantive objections to the School District's counterclaim, the School District's motion for summary judgment is granted and the IHO's Decision is reversed solely with respect to the Petitioners' claim that the School District inappropriately denied them access to the location of the proposed educational placement. Because this

reversal results in the School District prevailing on every claim made by the Petitioners, the Petitioners are not "prevailing parties" and they are not entitled to attorney fees.

The Court notes that, even if the Court were to affirm the sole finding by the IHO in the Petitioners' favor, the Petitioners do not qualify as "prevailing parties" because they undisputedly received no benefit from that finding and because no changes were made because of it. Accordingly, the Petitioners would not be entitled to attorney fees even if the IHO's finding on the access issue were to be affirmed.

## Conclusion

For the reasons stated herein, the School District's motion for summary judgment on its counterclaim and with respect to the Petitioners' request for attorney fees is GRANTED. The finding of a procedural violation by the IHO in the November 30, 2014 Decision is REVERSED.

SO ORDERED.

/s/ Mary M. Lisi

Mary M. Lisi
United States District Judge

June 3, 2015